ORIGINAL

# 307-15

NO. 05-13-01687-CR

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AUSTIN TEXAS

JAMES DESTRY HAMM

FILED IN
COURT OF CRIMINAL APPEALS

JUN 10 2015

Abel Acosta, Clerk

VS.

THE STATE OF TEXAS

## PETITION FOR DISCRETIONARY REVIEW

PETITION IN CAUSE# 2-13-340, 382ND FROM THE JUDICIAL DISTRICT COURT OF ROCKWALL COUNTY, TEXAS AND THE FIFTH 5TH DISTRICT COURT OF APPEALS FOR THE 5TH SUPREME DISTRICT OF TEXAS. CAUSE#5-13-01687CR, PD-0307-15.

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 05 2015

Abel Acosta, Clerk

(1)

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES + COUNSEL . . . . . . . . . . . . . . . .

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . .

PETITION FOR DISCRETIONARY REVIEW . . . . . . . . . . . . 4 THRU 22

STATEMENT OF THE CASE . . . . . . . . . . . . . . . 5

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . 5

FIRST AND SECOND GROUND FOR REVIEW . . . . . . . . . . 6 THRU 17

SUMMARY OF ARGUMENT AND ARGUMENTS . . . . . . . . . 6 THRU 17

THE THIRD POINT OF ERROR . . . . . . . . . . . 18 THRU 22

SUMMARY OF ARGUMENT . . . . . . . . . . . . 18

CONCLUSION AND PRAYER . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . 22.

## IDENTITY OF PARTIES AND COUNSEL

PETITIONER CERTIFIES THAT THE FOLLOWING IS A COMPLETE LIST OF THE PARTIES, ATTORNEYS AND OTHER PERSON WHO HAS ANY OF INTEREST IN THIS CASE:

| PARTIES | COUNSEL |
|---|---|
| STATE OF TEXAS | KENDA CULPEPPER |
| | ROCKWALL COUNTY DISTRICT ATTORNEY |
| | 1111 E. YELLOWJACKET LANE, SUITE 201 |
| | ROCKWALL, TEXAS 75087- 972-204-68 |
| | |
| | LAUREN ELLIS |
| | ROCKWALL COUNTY ASST. DISTRICT ATTORNEY |
| | 1111 E. YELLOWJACKET LANE, SUITE 201 |
| | ROCKWALL, TEXAS 75087 PH# 972-204-6800 |
| | |
| | ~~XXXXXX~~ CRAIG STODDART |
| | ROCKWALL COUNTY ASST. DISTRICT ATTORNEY |
| | 1111 E. YELLOWJACKET LANE, SUITE 201 |
| | ROCKWALL TEXAS 75087 PH# 972-204-6800 |
| | |
| Δ PETITIONER | JAMES DESTRY HAMM—PROSE |
| | BRADSHAW STATE JAIL |
| | P.O. BOX 9000 |
| | HENDERSON TEXAS 75653 |
| | PRESENTLY INCARCERATED |

(i)

| PARTIES | COUNSEL |
|---|---|
| TRIAL ATTORNEY | MARK R. ROBINIUS<br>1940 FOREST LANE, SUITE B<br>GARLAND TEXAS 75042<br>PH.# 972-487-3785 |
| COURT-APPOINTED ATTORNEY ON APPEAL | TED SANSOM<br>P.O. BOX 1178<br>ROCKWALL TEXAS 75087<br>PH.# 972-771-2410 |

ALMANZA V. STATE 686 S.W. 2D 157 TEX. CRIM. APP. 1985 . . . . . P. 7

BROOKS V. STATE 323 S.W. 3D 893 TEX. CRIM. APP. 2010 . . . . . . P. 19

CAMPBELL V. STATE 910 S.W. 2D 475, TEX. CRIM. APP. 1995 . . . P. 10,14

CRENSHAW V. STATE 378 S.W. 3D 460 TEX. CRIM APP. 2012 . . . P. 14

DELGADO V. STATE 235 S.W. 3D 688 TEX CRIM. APP. 1991 . . . P. 7

FENNELL V. STATE 424 S.W. 2D 631 TEX. CRIM. APP. (1968) . . . P. 11,15

HARRIS V. STATE 522 S.W. 2D 199 TEX. CRIM. APP. 1975 . . . . P. 14,15,16

HOOPER V. STATE 214 S.W. 3D 9 TEX. CRIM APP. 2007 . . . . . . P. 19

HUTCH V. STATE 922 S.W. 2D 166 TEX. CRIM. APP. 2007 . . . . P. 10

JACKSON V. VIRGINIA 443 U.S. 307, (1979) . . . . . . . . . P. 19

LUCIO V. STATE 351 S.W. 3D 878 TEX. CRIM. APP. 2011) . . . . . . P. 19

MALIK V. STATE 953 S.W. 2D 239 TEX. CRIM. APP. 1997 . . . . . P. 19

MCINTOSH V. STATE 297 S.W. 3D 536, TEX. APP. HOUSTON 1 DIST. 2009 PER P. 7

MARTIN V. STATE 202 S.W. 3D 635, 639, TEX. CRIM. APP. 2006 . P. 14

PLOEGER V. STATE 189 S.W. 3D 799 TX. APP HOUSTON 1 DIST. 2006, . . . . . P. 15

SANCHEZ V. STATE 209 S.W. 3D 117 TEX. CRIM. APP. 2006 . . . P. 9,15

SAUNDERS V. STATE 817 S.W. 2D 688 TEX CRIM APP. 1991 . . . . P. 7

TAYLOR V. STATE 332 S.W. 3D 483 TEX. CRIM. APP. 2011 . . . . . P. 16

STATUTES

TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 36.14 . . . . . . P. 6

TEXAS PENAL CODE SECTIONS 1.07 (8), 1.07 (42) 6.03 (b) . . . . . P. 9,10,18

TEXAS PENAL CODE SECTION 42.072 (A1)A) 42.072 . . . P. 9,10,18

NO. 05-13-01687-CR

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

JAMES DESTRY HAMM,
PETITIONER,

VS.

THE STATE OF TEXAS

PETITION IN CAUSE #382ND FROM THE JUDICIAL
DISTRICT COURT OF ROCKWALL COUNTY, TEXAS
AND FIFTH DISTRICT COURT OF APPEALS FOR THE
5TH SUPREME JUDICIAL DISTRICT OF TEXAS

PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

JAMES DESTRY HAMM, PETITIONS THE COURT TO REVIEW THE JUDGEMENT AFFIRMIN
HIS CONVICTION FOR STALKING IN CAUSE NO. TRIAL COURT CAUSE NO. 02-13-340
APPEAL NO. 05-13-01687-CR

(O) STATEMENT REGARDING ORAL ARGUMENT
THE GROUNDS FOR REVIEW SET FORTH IN THIS PETITION CONCERNS THE
CONFLICTING OPINIONS OF DIFFERENT COURTS OF APPEALS ON THE SAME POINT
OF LAW, AND ORAL ARGUMENT WOULD BE HELPFUL TO THE COURT IN DISTINGU-
ISHING THESE AUTHORITIES AND ARRIVING AT THE APPROACH THAT IS CONSIS
-TENT WITH PRIOR OPINIONS OF THIS COURT.

(4)

## STATEMENT OF THE CASE

A PETITIONER WAS INDICTED IN ROCKWALL COUNTY FOR THE OFFENSE OF STALKING THIRD DEGREE FELONY UNDER PENAL CODE SECTION 42.072. CR 7.

HE PLED NOT GUILTY AND WAS FOUND GUILTY BY THE JURY WHICH ASSESSED HIS PUNISHMENT AT 6 YEARS CONFINEMENT IN TDCJ-ID. CR 92 (NUNC PRO TUNC) JUDGEMENT TO CORRECT PREVIOUS JUDGEMENT DESIGNATION OF OFFENSE AS STATE JAIL FELONY CR 78' RR3-107, 4-77

APPELLANT TIMELY FILED A MOTION FOR NEW TRIAL ON THE DAY OF JUDGEMENT CR 83 AND TIMELY FILED NOTICE OF APPEAL 7 DAYS LATER. CR 84 THE MOTION FOR NEW TRIAL WAS NOT ACTED UPON. THE TRIAL COURT CERTIFIED RIGHT OF APPEAL. CR. 82.

## STATEMENT OF PROCEDURAL HISTORY

ON MARCH 6 2015, AN MEMORANDUM OPINION OF THE COURT OF APPEAL-S WAS HANDED DOWN THAT JUDGEMENT OF TRIAL COURT IS AFFIRMED.

(1) NO MOTION FOR REHEARING WAS FILED.

(2). PETITIONER FILE AN EXTENSION OF TIME TO THE COURT OF CRIMINAL APPEALS IN AUSTIN TEXAS ON MARCH 24 2015 FOR 90 DAYS TO FILE MY (PDR) PETITION FOR DISCRETIONARY REVIEW AND BRIEF THAT IS DUE BY JUNE 5 2015.

(ISSUES ONE AND TWO ARGUED TOGETHER),

## FIRST GROUND FOR REVIEW

IN HIS FIRST GROUND, PETITIONER ARGUES THAT THE FIFTH DISTRICT COURT OF APPEALS ERRED IN HOLDING THAT THERE WAS ERROR IN THE JURY CHARGE, BUT ARGUES THAT THE ERROR DID NOT RESULT IN EGREGIOUS HARM. WHEN THE WORDING AND OMISSIONS IN THE JURY CHARGE ALLOWED THE JURY TO CONVICT APPELLANT/PETITIONER "ON LESS THAN THE ESSENTIAL STATUTORY ELEMENTS AND DEFINITIONS OF THE OFFENSE."

THE ERROR IN THE JURY CHARGE RESULTED IN EGREGIOUS HARM BECAUSE HE WAS DENIED HIS RIGHT TO A JURY DETERMINATION ON EACH ELEMENT OF THE ALLEGED OFFENSE AND AS A RESULT, WAS DENIED A FAIR AND IMPARTIAL TRIAL.

## FIRST GROUND FOR REVIEW REASONS

APPELLANT MADE NO OBJECTION TO THE COURTS CHARGE TO THE JURY AT GUILT-INNOCENCE. (RR.3-82) ID. HOWEVER, IT'S THE JUDGE'S DUTY TO INSTRUCT THE JURY ON THE LAW APPLICABLE TO THE CASE EXISTS EVEN WHEN DEFENSE COUNSEL FAILS TO OBJECT TO INCLUSIONS OR EXCLUSIONS IN THE CHARGE, THIS REQUIRES THE JUDGE TO SUA SPONTE PROVIDE THE JURY WITH THE LAW APPLICABLE TO THIS CASE, UNDER ART 36.14 TEX. CODE CRIM PROC. ID THE COURTS OF APPEALS (JUDGES) ERRED BY HOLDING THE TRIAL COURT DID NOT COMMIT EGREGIOUS HARM AND DEPRIVE PETITIONER HARM OF A FAIR AND IMPARTIAL TRIAL WITH A PURE JURY DETERMINATION.

ARTICLE 36.14: DETAILS THE REQUIREMENTS AND PROCEDURES FOR THE DELIVERY OF THE COURTS CHARGE TO THE JURY. ID 36.14: ALSO PROVIDES "THE JUDGE SHALL... DELIVER TO THE JURY... A WRITTEN CHARGE DISTINCTLY SETTING FORTH THE LAW APPLICABLE TO THE CASE." ID.

PETITIONER ARGUES THE JURY WAS INSTRUCTED IN SUCH A WAY THAT IT WAS NOT REQUIRED TO FIND AT LEAST TWO ELEMENTS AND DEFINITIONS TO BE

(6)

PROVEN BEYOND A REASONABLE DOUBT PRIOR TO CONVICTING THE PETITIONER.
" AS THE EVIDENCE WAS DEVELOPED AT TRIAL AND ARGUED TO THE JURY, BOTH THOSE ELEMENTS, DEFINITIONS WERE DISPUTED.

THE JURY CHARGE AUTHORIZED THE JURY TO CONVICT THE PETITIONER WITHOUT RESOLVING THAT DISPUTE. ON THE FACTS OF THIS CASE IT IS NO EXAGGERATION TO SAY THAT THE PETITIONER WAS DEPRIVED OF HIS VALUABLE RIGHT TO HAVE A JURY DETERMINATION OF EVERY ELEMENT OF THE ALLEGED OFFENSE AND WAS VITALLY AFFECTED, TO HIS SUBSTANTIAL DETRIMENT.

PETITIONER, ARGUES THAT THE JURY WAS NOT SUBMITTED A CORRECT STATEMENT OF THE ELEMENTS OF THE OFFENSE, IN THE APPLICATION PARAGRAPH TO THE JURY CHARGE, ALLOWING OR INSTRUCTING A FINDING OF GUILT ON LESS THAN THE ESSENTIAL STATUTORY ELEMENTS AND DEFINITION OF THE OFFENSE.

" THE STANDARD FOR REVIEW THEREFORE IS WHETHER THE ERROR, IF ANY EXISTS, CONSTITUTES EGREGIOUS HARM RATHER THAN SOME HARM. SEE ALAMANZA V. STATE 686 S.W.2D 157 (TEX. CRIM. APP. 1985), A DETERMINATION OF THAT ISSUE DEPENDS UPON A CASE-BY-CASE ANALYSIS CONSIDERING THE ENTIRE JURY CHARGE, THE STATE OF EVIDENCE, ARGUMENT OF COUNSEL AND OTHER RELEVANT INFORMATION IN THE RECORD.

THE TRIAL COURT DOES HAVE A SUA SPONTE DUTY TO INSTRUCT THE JURY WITH REGARD TO THE LAW APPLICABLE TO THIS CASE. ARTICLE 36.14 TEXAS CODE OF CRIMINAL PROCEDURE. DELGADO V. STATE 235 S.W.3D 244 (TEX. CRIM. APP. 2007),

EGREGIOUS HARM REQUIRES A SHOWING OF ACTUAL RATHER THAN THEORETIC HARM. IT CONSISTS OF ERROR AFFECTING THE VERY BASIS OF THE CASE OR DEPRIVING THE DEFENDANT OF A VALUABLE RIGHT, OR MAKING THE CASE FOR CONVICTION CLEARLY AND SIGNIFICANTLY MORE PERSUASIVE. SAUNDERS V. STATE 817 S.W.2D 688 (TEX. CRIM. APP. 1991); MCINTOSH V. STATE 297 S.W.3D 536, 536, (TEX. APP. HOUSTON 1ST DIST. 2009, PET. REFUSED.)

THE ERROR PETITIONER COMPLAINED OF HERE RELATES NOT TO A DEFENSIVE

(7)

THEORY BUT TO THE ELEMENTS OF THE OFFENSE WITH WHICH PETITIONER WAS CHARGED AND SPECIFICALLY, THE ELEMENTS CHARGED IN THE APPLICATION PARAGRAPH OF THE COURTS CHARGE TO THE JURY.

THE APPLICATION PARAGRAPH DISREGARDED AND CONTRADICTED THE ABSTRACT STATEMENT OF THE ELEMENTS SET OUT IN THE STATUTE. IT TRACKED THE INDICTMENT INSTEAD, THE RESULT BEING WORDED AS FOLLOWS:

" NOW, IF YOU FIND FROM THE EVIDENCE BEYOND A REASONA DOUBT THAT BETWEEN THE DATES OF ON OR ABOUT JUNE 1, 2012 AND MAY 10 2013, IN ROCKWALL COUNTY, TEXAS, THE DEFENDANT, JAMES OESTRY HAMM, DID THEN AND THERE UNLAWFULLY, KNOWINGLY ENGAGE IN CONDUCTED DIRECTED SPECIFICALLY TOWARD "L. M." THAT THE DEFENDANT KNEW OR REASONABLY BELIEVED THE SAID "L.M." WOULD REGARD AS THREATENING, AND THE DEFENDANT'S CONDUCT WOULD CAUSE FEAR AND DID CAUSE L. M. TO FEAR BODILY INJURY OR DEATH FOR SAID L.M. BY FOLLOWING L. M. ON MORE THAN ONE OCCASION AND BY CONTINUING TO FOLLOW L. M. AFTER BEING NOTIFIED BY OFFICER J. ELLIS, ROCKWALL POLICE DEPARTMENT, THAT THE DEFENDANT WAS PLACING "L. M." IN FEAR, AND IT IS FURTHER PRESENTED IN AND TO SAID COURT, THAT EACH OF THE FORGO-ING ACTS WAS COMMITTED PURSUANT TO THE SAME SCHEME OR COURSE OF CONDUCT THAT WAS DIRECTED SPECIFICALLY AT L.M., THEN YOU WILL FIND THE DEFENDANT GUILTY AS CHARGED IN THE INDICTMENT." CR.63CU APART FROM AWKWARD WORDING SUCH AS THE ALLEGATION DEFENDANT KNEW OR REASONABLY BELIEVED L. M., WOULD REGARD THE CONDUCT AS " THREATENING") AND THAT THE CONDUCT WOULD CAUSE "FEAR," AND THAT THE CONDUCT WOULD CAUSE "FEAR," AND THAT THE OFFICER NOTIFIED DEFENDANT HE (DEFENDANT) WAS PLACING L. M., IN "FEAR" NONE OF WHICH IS CONSISTENT WITH THE ELEMENTS OF THE OFFENSE, THE PRIMARY DEFECT IN THE PARAGRAPH ARE THAT (1) THE WORDING DOES NOT REQUIRE THE JURY TO FIND THE ELEMENT OF THE OFFENSE THAT THE CONDUCT WOULD

(8)

CAUSE A REASONABLE PERSON TO FEAR BOODLY INJURY OR DEATH FOR HERSELF SECTION: 42.072 (A)(3)(A) TEXAS PENAL CODE AND (2) THE WORDING DOES NOT REQUIRE THE JURY TO FIND THE ELEMENT OF THE OFFENSE THAT DEFENDANT ENGAGED IN CONDUCT THAT HE KNEW OR REASONABLY BELIEVED L.M. WOULD REGARD AS THREATENING BOODLY INJURY OR DEATH SECTION 42.072 (A) 1) A), TEXAS PENAL CODE. A FAIR READING OF THE APPLICATION PARAGRAPH WILL SHOW THAT THE ONLY ELEMENT SUBMITTED TO THE JURY WAS THAT OF CAUSING L.M. TO BE PLACED IN FEAR OF BOODLY INJURY OR DEATH. "CR 63".

THE TRIAL ~~COURT~~ COURT ERRED WHEN IT ALLOWED THE JURY TO BE INSTRUCTED IN SUCH A WAY THAT IT WAS NOT REQUIRED TO FIND TWO ELEMENTS OF THE OFFENSE TO BE PROVED BEYOND A REASONABLE DOUBT, AN ERROR WHICH WAS HELD TO DEPRIVE DEFENDANT OF THE VALUABLE RIGHT TO HAVE A JURY DETERMINE EVERY ELEMENT OF THE ALLEGED OFFENSE AND THEREFORE EGREGIOUS. SEE SANCHEL V. STATE, 209 S.W.3D 117 (TEX. CRIM. APP. 2006)

IN "SANCHEZ," ONE OF THE ELEMENTS THE COURT FOUND TO BE EGREGIOUS ERROR WAS THE CHARGE DID NOT REQUIRE THE JURY TO FIND DEFENDANT KNEW HIS CONDUCT, UNDER A PRIOR STATUTE, WAS "UNWELCOME" SIMILARLY THE APPLICATION PARAGRAPH IN "HAMM'S" PRESENT CASE, INQUIRING IF DEFENDANT KNEW HIS CONDUCT WOULD BE REGARDED AS "THREATENING" OR WOULD CAUSE "FEAR" ALLOWED THE JURY TO "SIDESTEP" THE REQUIREMENT THAT THE THREATING OR FEAR SHOULD BE THREATENING OR FEAR OF DEATH OR BOODLY INJURY AS REQUIRED BY THE STATUTE AND AS HELD IMPERMISSIBLE ERROR IN SANCHEZ.

THE JURY CHARGE IN IT'S WORDING AND OMMISSIONS ALLOW THE JURY TO CONVICT WITHOUT RESOLVING THE DISPUTED ISSUES OF WHETHER A REASONABLE PERSON WOULD HAVE FEARED BOODLY INJURY OR DEATH

FROM A PETITIONER'S ACTIONS AND ALSO WHETHER PETITIONER KNEW OR REASONABLY BELIEVED HIS ACTIONS WOULD BE TAKEN AS THREATENING BODILY INJURY OR DEATH. PETITIONER "HAMM" WAS THEREBY DEPRIVED OF HIS RIGHT TO A JURY DETERMINATION OF EVERY ELEMENT OF THE ALLEGED OFFENSE AND THE RESULT WAS DENIAL OF A FAIR AND IMPARTIAL TRIAL THE EVIDENCE REPEATEDLY REFERRED TO FEAR ALONE AND THE JURY ONLY HAD TO LOOK AS FAR AS THE INDICTMENT AND JURY CHARGE APPLICATION PARAGRAPH FOR INSTRUCTIONS THAT FEAR ALONE WOULD JUSTIFY A GUILTY FINDING. THE JURY COULD THEN IGNORE THE OMITTED 2 TWO ELEMENTS AND LESSEN SIGNIFICANTLY THE STATES BURDEN OF PROO PROOF AND THAT WAS EGREGIOUS ERROR. SEE CRENSHAW V. STATE 378 S.W.3D 460 (TEX. CRIM. APP. 2012)

IT IS THE APPLICATION PARAGRAPH OF THE CHARGE, NOT THE ABSTRACT PORTION, THAT AUTHORIZES A CONVICTION. THE CHARGE SHOULD NOT MERELY AVOID CONFUSING THE JURY, IT SHOULD AFFIRMATIVELY PREVENT CONFUSION. SEE CAMPBELL V. STATE, 910 S.W.2D 475 (TEX. CRIM. APP. 1995). AN ABSTRACT CHARGE ON A THEORY OF LAW THAT IS NOT APPLIED TO THE FACTS DOES NOT AUTHORIZ THE JURY TO CONVICT ON THAT THEORY. HUTCH V. STATE 922 S.W.2D 166 TX.CRIM APP. 1996).

PETITIONER, CORRECTLY POINTS OUT THAT THE APPLICATION PARAGRAPH OF TH JURY CHARGE DOES NOT CONTAIN THE REQUIRED ELEMENT THAT DEFENDAN (HAMM) CONDUCT "WOULD CAUSE A REASONABLE PERSON TO FEAR BODILY INJURY OR DEATH." TEX. PEN. CODE § 42.072 (A)(3)A).

PETITIONER CORRECTLY POINTS OUT AGAIN THAT THE APPLICATION PARAGRAPH INCOMPLETELY SETS OUT THE ELEMENT THAT "DEFENDANT KNEW OR REASONABLY THAT HIS CONDUCT WOULD BE REGARDED BY THE VICTIM AS THREATENING BODILY INJURY OR DEATH" BY OMITTING THE WORDS "BODILY INJURY OR DEATH." THE QUESTION LEFT TO BE DETERMINED

(10)

IS WHETHER, INLIGHT OF THE ENTIRE RECORD, EITHER ERROR AMOUNTS TO EGREGIOUS HARM. "THE ANSWER IS THAT IT DOES.

PETITIONER ARGUES THE ELEMENT OF THE OFFENSE REQUIRING PROOF THAT A REASONABLE PERSON ALSO WOULD BE PLACED IN FEAR OF BOODLY INJURY OR DEATH LIKEWISE WAS MEANT AS AN IMPROVEMENT OVER THE OLD LANGUAGE, THAT ELEMENT, HOWEVER, IS NOT IN THE PRESENT APPLICATION PARAGRAPH OF THE CHARGE IN ANY FORM. THE DEFECTS IN THE APPLICATION PARAGRAPH ARE NOT CURED BY THE ABSTRACT STATEMENT OF THE LAW EVEN IF CORRECT. SEE HARRIS V. STATE, 522 S.W.2D 199 TEX. CRIM. APP. 1975];

THE STATE OF EVIDENCE DOES NOT SUPPORT A CONCLUSION THAT THE ELEMENT, REQUIRING PETITIONER TO KNOW OR REASONABLY BELIVE THE OTHER PERSON WILL REGARD HIS CONDUCT AS THREATENING BOODLY INJURY OR DEATH, WAS ADEQUATELY PROVED. THE PETITIONER MAY NOT THEREFORE BE SAID TO HAVE RECIEVED A FAIR AND IMPARTIAL TRIAL NOTWITHSTANDING DEFECTS AND OMISSIONS IN THE CHARGE. FENNELL V. STATE 424 S.W.2D 631, 631, [TEX. CRIM. APP. 1968]

THERE WAS NEVER ANY VERBAL EXCHANGE BETWEEN PETITIONER AND L.M. OR HER FAMILY, WITH THE SINGLE EXCEPTION THAT "HAMM" SAID "HI. HOW ARE YOU DOING?" DURING THE EZ MART CONTACT. RR 2 218-219, IF "HAMM" KNEW OR REASONABLY BELIEVED L.M. REGARDED HIS CONDUCT AS BEING THREATENING BODILY INJURY OR DEATH, HE COULD NOT HAVE LEARNED IT FROM L.M. OR HER FAMILY.

THE STATE RELIED PRIMARILY UPON THE TESTIMONY AND ACTIONS OF OFFICER ELLIS FOR EVIDENCE TO PROVE THIS PARTICULAR ELEMENT OF THE OFFENSE. OF. ELLIS, TESTIMONY WAS THAT AFTER 3 INCIDENTS OF HONKING AND TRYING TO MAKE CONTACT WITH HER BY "HAMM" HE WENT TO "HAMM" AND TOLD HIM THE GIRL AND HER MOTHER WAS CONCERNED ABOUT HER SAFETY AND IT WOULD BE IN HIS BEST INTEREST

(11)

INTERESTS NOT TO MAKE ANY MORE CONTACT WITH HER. "HAMM" REPLIED "WELL, HOW AM I SUPPOSED TO GET A DATE IF I CAN'T TALK TO ANYONE?" RR. 3-30, OFFICER ELLIS HAD NO FURTHER CONTACT WITH "MR HAMM", RR 3-31,

OFFICER ELLIS WAS THEN ASKED, "... FROM YOUR TRAINING AND EXPERIENCE ... WOULD YOU EXPECT SOMEONE WHO'S BEEN WARNED BY A POLICE OFFICER TO CONTINUE WITH THEIR ACTION OR STOP?" PETITIONER, OBJECTED TO SPECULATION AND DISTRICT ATTORNEY RESPONDED THAT THE QUESTION WAS PROPER TO PROVE UP THE ELEMENT OF HOW A REASONABLE PERSON WOULD FEAR THIS SITUATION, THE COURT ERRED WHEN IT ALLOWED THE QUESTION AND OFFICER SAID HE WOULD EXPECT A PERSON TO STOP WHAT-EVER ACTIONS HAD BEEN WARNED AGAINST AND THAT IF THE PERSON DID NOT DO SO, IT WOULD TELL HIM THE PERSON THE PERSON JUST DID NOT COMPREHEND OR WAS IGNORING THE LAW (RR 3-32-34)

ON CROSS EXAMINATION THE OFFICER WAS ASKED REPEATLY, HOW... PETITIONER'S ACTIONS COULD BE CONSIDERED AS THREATENING BODILY INJURY OR DEATH, TO WHICH HE REPLIED THAT THE GIRL WAS SCARED, (RR 3-38 )

OFFICER DONALDSON WAS THE NEXT OFFICER TO CONTACT "HAMM" AFTER ANOTHER HONKING INCIDENT WAS REPORTED (RR 3-50 ) TELLINGLY THE OFFICER SAID THAT WHEN HE INTERVIEWED MOTHER AND DAUGHTER, THEY REPORTED THE " HARRASSMENT" HAD CAUSED THE DAUGHTER TO BE IN "FEAR", (RR 3-51)

AGAIN, DONALDSON SAID HE TALKED TO OFFICER ELLIS WHO SAID HE HAD TOLD "HAMM" HIS ACTIONS HAD PLACED A JUVENILE IN "FEAR" (RR. 3-53 AND 3-57 ) DONALDSON WAS ASKED IF "HAMM" SEEMED TO GET THE POINT OF HIS CONVERSATION OF IF HE THOUGHT HIS BEHAVIOR WAS OKAY. DONALDSON REPLIED : " HE DID NOT GET THE POINT ..... IN

(12)

MY OPINION HE DID NOT GET THE POINT." RR 3-58. CROSS-EXAMINATION OF OFFICER DONALDSON AGAIN REPEATLY QUESTIONED WHY "THE ACTIONS OF "HAMM" WOULD CAUSE SOMEONE TO FEAR BODILY INJURY OR DEATH. HE REPLIED THAT A 25 YEAR OLD MAN MAY NOT HAVE BEEN PLACED IN "FEAR" BUT A YOUNG FEMALE MAY BE DIFFERENT. RR 3-67

IN CLOSING ARGUMENTS, THE DISTRICT ATTORNEY STATED THAT THE EVIDENCE WAS CLEAR ON THE ELEMENTS OF WHETHER L.M. WAS PLACED IN FEAR OF BODILY INJURY OR DEATH, BASED ON HER TESTIMONY. RR 3-88.

THE ELEMENT OF WHETHER A REASONABLE PERSON ALSO WOULD HAVE "FEAR" WAS ARGUED UNDER THE "REASONABLE BELIEF" DEFINITION AS APPLYING TO A PERSON IN THE SAME CIRCUMSTANCES AND AGE AS L.M. AND OFFICER DONALDSON'S TESTIMONY WAS RECALLED THAT HE SAID IF THAT WERE HIS DAUGHTER, HE WOULD BE PLACED IN "FEAR". RR 3-88-89

## CONCLUSION

PETITIONER CONCLUDED THE TRIAL COURT/THE (5TH) FIFTH COURT OF APPEAL ERRED THAT THE ERROR IN THE JURY CHARGE DID NOT RESULT IN EGREGIOUS EGREGIOUS HARM. THE COURT OF APPEALS/TRIAL COURT ERROR BY ALLOWING "HAMM" TO CONVICTED BY A JURY THAT RECIEVED A FUNDAMENTAL ERRONEOUS JURY CHARGE THAT DISTINCTLY DID NOT SET FORTH THE LAW APPLICABLE TO "HAMM'S" CASE AND SET OUT ALL OF THE ESSENTIAL ELEMENTS OF THE OFFENSE.

SEE RR 3 88-89; THE DISCUSSION ON THIS ELEMENT "REASONABLE BELIEF" WAS VERY CONFUSING TO THE JURY. THE APPLICATION PARAGRAPH DID NOT ASK THE JURY WHETHER A REASONABLE PERSON WOULD HAVE FEARED BODILY INJURY OR DEATH. THE DISTRICT ATTORNEY ATTEMPTED TO AVOID THIS DEFECT BY BRINGING IN THE "REASONABLE BELIEF" DEFINITION AND ARGUING THAT THE SAME CIRCUMSTANCES AS THE ACTOR PORTION OF THE

(13)

DEFINITION NECESSARILY MEANS ANOTHER 17 YEAR OLD GIRL AND THAT IF L.M. WAS JUSTIFIED IN HER FEAR THEN ANOTHER 17 YEAR OLD WOULD ALSO BE, RR.3-88. THE JURY WOULD HAVE FOUND THE REASONABLE BELIEF DEFINIT TO HAVE RELEVANCE ONLY TO APPLICATION PARAGRAPH'S ASKING IF "HAMM" REASONABLY BELIEVED HIS CONDUCT WOULD BE CONSIDERED AS "THREATENING," SEE CRENSHAW V. STATE 378 S.W. 3D 460 (TEX. CRIM. APP. 2012). THE COURT HELD THE CHARGE SHOULD NOT MERELY AVOID CONFUSING THE JURY IT SHOULD AFFIRMATIVELY PREVENT CONFUSION BECAUSE AN ~~AB~~ ABSTRACT CHARGE ON A THEORY OF LAW THAT IS NOT APPLIED TO THE ~~FACTS~~ FACTS DOES NOT AUTHORIZE THE JURY TO CONVICT ON THAT THEORY. SEE CAMPBELL V. STATE 910 S.W. 2D 475 (TEX. CRIM. APP. 1995).

IT IS THE APPLICATION PARAGRAPH OF THE CHARGE, NOT THE ABSTRACT PORTION, THAT AUTHORIZES A CONVICTION. "A JURY CHARGE MUST DISTINCTLY SET FORTH THE LAW APPLICABLE TO THE CASE AND SET OUT ALL OF THE ESSENTIALS ELEMENTS OF THE OFFENSE." SEE MARTIN V. STATE 200 S.W. 3D ~~721~~ 635, 639, TEX. CRIM. APP. 2006); SEE TEX. CODE CRIM. APP. ART. 36.14 WEST 2001 REQUIRING THE JUDGE TO DELIVER TO THE JURY "A WRITTEN CHARGE THAT DISTINCTLY SETTING FORTH THE LAW APPLICABLE TO CASE").

"HAMM", CONCLUDED THAT THE COURT OF APPEALS/TRIAL COURT ERRED HOLDING THAT JURY CHARGE WAS HARMLESS, BECAUSE " THE MEANING OF A JURY INSTRUCTION MUST BE TAKEN FROM THE WHOLE CHARGE, AND JURORS ARE NOT AUTHORIZED TO RETURN A VERDICT EXCEPT UNDER THOSE CONDITIONS GIVEN BY THE APPLICATION PARAGRAPH OF THE CHARGE,"

IN THE PRESENT CASE, THE APPLICATION PARAGRAPH ONLY "REFER[RED]" TO ONE ELEMENT OF STALKING LEAVING TWO (2) ELEMENTS. IN HARRIS V. STATE, THE COURT OF CRIMINAL APPEALS HELD THAT ALTHOUGH THE ABSTRACT PARAGRAPH ADEQUATELY EXPLAINED THE LAW, "THERE [WAS] A COMPLETE FAILURE TO APPLY THIS LAW TO THE FACTS AND ISSUES

(14)

IN EVIDENCE. ID. 522 S.W.2D 199, 201 (TEX. CRIM. APP.1975). IN CONTRAST, THE JURY CHARGE AT ISSUE HERE CONTAINED AN APPLICATION PARAGRAPH THAT DID APPLY THE LAW TO THE FACTS AND ISSUES.

IN THE INSTANT CASE, "HAMM" CONCLUDED WHILE THE APPLICATION PARAGRAPH OF THE JURY CHARGE DID NOT CONTAIN THE REQUIRED ELEMENT THAT THE DEFENDANT'S CONDUCT "WOULD CAUSE A REASONABLE PERSON TO FEAR BODILY INJURY OR DEATH FOR HERSELF," AND SIMILARLY, WHILE THE APPLICATION PARAGRAPH DID NOT CONTAIN THE ELEMENT THAT DEFENDANT "HAMM" MUST KNOW OR REASONABLY BELIEVE THAT HIS CONDUCT WOULD BE REGARDED BY THE VICTIM AS THREATENING, IT DOES NOT SAY REGARDED BY THE VICTIM AS "THREATENING BODILY INJURY OR DEATH," SEE C.R. 63

"LIKEWISE, IN FENNELL V. STATE, THE COURT CONCLUDED THAT, BECAUSE THE COURT ONLY INSTRUCTED THE JURY ABSTRACTLY ON THE ISSUE OF SELF DEFENSE AND DID NOT APPLY THE LAW TO THE FACTS, THERE WAS ERROR IN THE CHARGE. ID. 424 S.W.2D. 631, 632-33 (TEX. CRIM.APP. 1968)

AS EXPLAINED ABOVE, IN "HAMM'S" CASE, THE JURY CHARGE DID NOT EXPLAIN THE ELEMENTS AND DEFINITIONS OF STALKING ABSTRACTLY, CORRECTLY OR IT DID NOT APPLY THE LAW TO THE FACTS OF THE CASE. SEE SANCHEZ V. STATE 209 S.W.3D 117 (TEX. CRIM APP. 2006)

IN PLOEGER V. STATE 189 S.W.3D 799 TEX. APP. HOUSTON (1 DIST. 2006 NO PET.) THE TRIAL COURT HAD SUBMITTED A STALKING JURY CHARGE WHICH ALLOWED THE JURY TO CONVICT IF IT FOUND, AS ALLEGED IN THE INFORMATION, THAT DEFENDANT ENGAGED IN CONDUCT HE BELIEVED THE COMPLAINANT WOULD REGARD AS THREATENING BODILY INJURY OR DEATH, OR ALTERNATIVELY IF THE JURY FOUND, AS ALLEGED IN THE INFORMATION, THAT DEFENDANT CAUSED THE COMPLAINANT TO BE PLACED IN FEAR OF BODILY INJURY OR — DEATH AND THAT A REASONABLE PERSON WOULD HAVE BEEN PLACED IN FEAR OF BODILY INJURY OR DEATH   THE COURT HELD THAT THE 3

(15)

3 ELEMENTS SUBMITTED WERE ALL REQUIRED ELEMENTS OF THE OFFENSE OFFENSE OF STALKING AND THAT TO ALLOW THE JURY TO CONVICT UPON LESS THAN A FINDING OF ALL THREE ELEMENTS WAS HARMFUL ERROR.

THE TRIAL COURT HAD SET OUT THE STALKING STATUTE CORRECTLY IN THE ABSTRACT STATEMENT OF THE LAW BUT HAD INCORRECTLY SUBMITTED THE ELEMENTS OF THE OFFENSE IN THE APPLICATION PARAGRAPH. THE PLOEGER CASE DID NOT INVOLVE AN EGREGIOUS ERROR CLAIM AS DEFENDANT HAD MADE "MANY OBJECTIONS" TO THE CHARGE.

THE "PLOEGER" CASE IS HOWEVER INSTRUCTIVE, IN IT'S LEGISLATIVE HISTORY DISCUSSION, BY POINTING OUT THAT THE CRITICISM OF THE PRIOR STATUTE'S VAGUENESS COULD BE PARTIALLY CORRECTED BY REQUIRING THE PROHIBITED CONDUCT BE LIMITED TO THAT DONE WITH IN- INTENT TO INFLICT FEAR OF BODILY INJURY OR DEATH TO AVOID FIRST AMENDMENT VIOLATIONS.

IN TAYLOR V. STATE S.W. 3D 483 (TEX. CRIM. APP. 2011) THE COURT DISCUSSED THE DIFFERENCE BETWEEN OMMISSION OF AN INSTRUCTION AND AN ERRONEOUS INSTRUCTION AND STATED IT PRESUMED THE JURY FOLLOWED ERRONEOUS INSTRUCTIONS. IF THAT PRESUMPTION WERE FOLLOWED IN THE PRESENTED CASE, IT'S INSTRUCTIVE, WOULD BE PRESUMED THAT PRESUMPTION WERE FOLLOWED IN "HAMM'S" PRESENT CASE, IT WOULD HAVE TO BE PRESUMED THAT THE JURY WOULD BELIEVE IT COULD CONVICT IF IT FOUND THAT "HAMM" KNEW OR REASONABLY BELIEVED HIS CONDUCT WAS "THREATENING" AND WOULD CAUSE "FEAR" COMBINED WITH A FIND- ING OF THE SINGLE ELEMENT THAT HIS CONDUCT DID CAUSE L.M. FEAR OF BODILY INJURY OR DEATH.

THE DIFFERENCE BETWEEN THREATEN AND FEAR ON ONE HAND AND FEAR AND THREATEN OF BODILY INJURY OR DEATH CANNOT BE CONSIDERED OTHER THAN SUBSTANTIAL. SINCE THE INDICTMENT LANGUAGE AM

(16)

AND THE APPLICATION PARAGRAPH LANGUAGE ESSENTIALLY IDENTICAL. THIS CASE BEGAN AND ENDED WITH THE OMMISSION OF ESSENTIAL ELEMENTS OF THE OFFENSE AND A LESSENING OF THE EVIDENCE REQUIRED RELATED TO FEAR AND THREATENING CONDUCT. IT WAS ESSENTIALLY A STRUGGLE OVER THE CONSTITUTIONALLY OF THE PREVIOUS STALKING STATUTE THAT BROUGHT THE BODILY INJURY OR DEATH LANGUAGE INTO THE NEW LAW AND THE UNDERLYING REASONABLY SHOULD NOT BE TAKEN LIGHTLY. PETITIONER CONCLUDED THAT THERE WAS ERROR THAT WAS EGREGIOUS ERROR, WHILE IT IS VERY UNFORTUNATE THAT NOT ALL OF THE REQUIRED LANGUAGE FOUND IT WAY INTO THE "APPLICATION" PORTION OF THE COURT'S CHARGE, THE DEFENDANT "HAMM" WAS DEPRIVED OF A FAIR AND IMPARTIAL TRIAL.

THE JURY WAS NOT CORRECTLY INFORMED OF THE ELEMENTS REQUIRED TO BE PROVED AND EVEN IN THE DEFINITIONAL PORTION OF THE CHARGE, AND THE JURY WAS NOT CORRECTLY INFORMED AT EVERY POSSIBLE JUNCTURE OF THE TRIAL.

THE COURT OF CRIMINALS SHOULD SUSTAIN ISSUES 1 AND 2, BY THE COURT REVERSING AND REMAND ON THE JURY CHARGE ISSUES.

(17)

## THE THIRD POINT OF ERROR

IN PETITIONER'S THIRD POINT OF ERROR, THE TRIAL COURT/COURT OF APPEALS 5TH DISTRICT, ERRED WHEN THEY HELDED THE EVIDENCE AGAINST "HAMM" WAS LEGALLY SUFFICIENT TO SUPPORT A CONVICTION FOR THE OFFENSE OF STALKING.

## SUMMARY OF THE ARGUMENT

THE STATE/COURT OF APPEALS ERRED WHEN IT HELDED THE EVIDENCE WAS LEGALLY SUFFICIENT TO THAT APPELLANT WAS KNEW OR REASONABLY BELIEVED THAT THE VICTIM WOULD REGARD HIS CONDUCT AS THREATENING BODILY INJURY OR DEATH. THE EVIDENCE SHOWS THAT "HAMM" DID NOT PLACE THE VICTIM L. M. IN FEAR FOR HER SAFETY.

## APPLICABLE LAW AND STANDARD OF REVIEW/ARGUMENTS AND AUTHORITIES

## ARGUMENT

PETITIONER ARGUES THE EVIDENCE IS LEGALLY INSUFFICENT TO PROVE THE NECESSARY ELEMENT THAT "HAMM" KNEW OF REASONABLY BELIEVED ( THE COMPLAINANT) WOULD REGARD HIS CONDUCT AS THREATENING BODILY INJURY OR DEATH. PETITIONER ARGUES LEGALLY INSUFFICIENCY OF THE EVIDENCE BASED ON THE ABSENCE OF ANY EVIDENCE TO SHOW DEFENDANT KNEW OR REASONABLY BELIEVE BELIEVE THAT HIS CONDUCT WOULD BE CONSIDERED AS THREATENING BODILY INJURY OR DEATH, ONE OF THE THREE ESSENTIAL ELEMENTS TO THE OFFENSE OF STALKING UNDER SECTION 42.072, TEXAS PENAL CODE.

PETITIONER, COMPLAINS THAT THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT HIS CONVICTION OR A CONVICTION FOR STALKING. SPECIFICALLY, THE EVIDENCE DOES NOT SUPPORT THAT HE KNEW OR REASONABLY BELIEVED THAT "L. M." WOULD REGARD HIS CONDUCT AS

(19)

THREATENING BODILY INJURY OR DEATH. THE THREE ELEMENTS CONSTITUTING THE OFFENSE OF STALKING ARE SUPPORTED BY VARYING DEGREES OF PROOF AND PETITIONER CONTENDS THAT THE ELEMENT REQUIRING THAT PETITIONER KNEW OR REASONABLY BELIEVED HIS CONDUCT WOULD CAUSE THE REQUISITE FEAR OF BODILY INJURY OR DEATH (UNDER THE STATUTE APPLICABLE AT THE TIME) IS NOT PROVED BEYOND A REASONABLE DOUBT.

---

THE REVIEWING COURT IS REQUIRED TO EXAMINE ALL THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE VERDICT AND DETERMINE WHETHER A RATIONAL TRIER OF FACT COULD HAVE FOUND THE ESSENTIAL ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT. JACKSON V. VIRGINIA 443 U.S. 307 (1979); LUCIO V. STATE 351 S.W.3D 878 TEX. CRIM. APP. 2011]; BROOKS V. STATE, 323 S.W.3D 893 (TEX. CRIM. APP. 2010); DEFERENCE MUST BE GIVEN TO THE FACTFINDER'S CREDIBILITY AND WEIGHT DETERMINATION BECAUSE THE FACTFINDER IS THE SOLE JUDGE OF WITNESS CREDITABILITY AND THE WEIGHT TO BE GIVEN TO THEIR TESTIMONY.

THE JURY IS PERMITTED TO MAKE REASONABLE INFERENCES FROM THE EVIDENCE PRESENTED AND CIRCUMSTANTIAL EVIDENCE IS AS PROBATIVE AS DIRECT EVIDENCE IN ESTABLISHING GUILTY. HOOPER V. STATE 214 S.W.3D 9 TEX. CRM APP. 2007) THE JURY CHARGE IS TO BE DEEMED HYPOTHETICALLY CORRECT FOR THE PURPOSE OF DECIDING THIS ISSUE. MALIK V. STATE 953 S.W.2D 239 (TEX. CRIM. APP. 1997).

PETITIONER, ARGUES THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THAT "HAMM" KNEW OR REASONABLY BELIEVED THAT THE COMPLAINANT WOULD REGARD HIS CONDUCT AS THREATENING BODILY INJURY OR DEATH BECAUSE (1) THE COMPLAINANT AND HER FAMILY DID NOT EXPRESS THEIR CONCERNS DIRECTLY TO "HAMM", (2) THERE WAS NOT "A SCINTILLA OF EVIDENCE OF ACTUAL THREAT OF BODILY INJURY OR DEATH [;]" AND (3) THERE WAS

(21)(19)

NO EVIDENCE THAT "HAMM" "WAS AWARE OF THE NATURE OF HIS CONDUCT OR THAT HIS CONDUCT WAS REASONABLY CERTAIN TO CAUSE THE RESULT[; 7" THE ELEMENT OF THE OFFENSE OF STALKING REQUIRING PROOF THAT THE COMPLAINANT WAS PLACED IN FEAR OF BODILY INJURY OR DEATH IS NOT SUBJECT TO AN INSUFFICIENCY CLAIM BECAUSE THE COMPLAINANT TESTIFIED TO HER FEARS AS AT RR2-233, PROOF OF THE ELEMENT REQUIRING THAT A REASONABLE PERSON WOULD HAVE LIKEWISE FEARED BODILY INJURY FROM THE CONDUCT IN EVIDENCE WAS NOT SO CLEARLY PROVED AS THE FIRST ELEMENT BUT PETITIONER CHOOSES NOT TO MAKE AN INSUFFICIENCY CLAIM FOR THIS ELEMENT IN VIEW OF THE TESTIMONY. EVEN THIS TESTIMONY IS SUBJECT TO THE CLAIM OF VAGUENESS, AS IT GENERALLY REFERS TO "FEAR" AND "THREAT" ALONE.

THE EVIDENCE HOWEVER DOES NOT SUPPORT THE ELEMENT REQUIRING ANY PROOF BEYOND A REASONABLE DOUBT THAT PETITIONER KNEW OR REASONABLY BELIEVED THE OTHER PERSON WOULD REGARD HIS CONDUCT AS THREATENING BODILY INJURY OR DEATH, RR.2-251.; RR3-37,39.

"AS A STARTING POINT, L.M. NOR HER FAMILY EVER HAD THE LEAST DIRECT COMMUNICATION WITH "HAMM" AND THEIR CONCERNS, HOWEVER WELL PROVED OR TRIAL, WERE NOT DIRECTLY EXPRESSED TO HIM.

SECONDLY, THIS CASE WENT FROM START TO FINISH WITHOUT A SCINTILLA OF EVIDENCE OF ACTUAL THREAT OF BODILY INJURY OR DEATH.

THE LAW WILL ALLOW A CERTAIN DEGREE OF SUBJECTIVE PERCEPTION OF FEAR OF DEATH OR BODILY INJURY ON THE PART OF A COMPLAINANT WITHOUT STRICTLY REQUIRING THAT PERCEPTION TO BE BASED ON ACTUAL THREATS OF VIOLENCE.

THE STATUTE HOWEVER REQUIRES THE ACCUSED TO "KNOW OR REASONABLY BELIEVE" HIS CONDUCT WILL BE REGARDED AS THREATENING BODILY INJURY OR DEATH TO PROVIDE A NECESSARY MENS REA AND CULPABILITY

(20) (BP2.0)

ELEMENTS AS DISCUSSED IN SANCHEZ AND MCINTOSH, SUPRA. THE JURY CHARGE CONTAINED A DEFINITION OF KNOWLEDGE AND KNOW-INGLY BUT NO EVIDENCE WAS PRESENTED THAT "HAMM" WAS AWARE OF THE NATURE OF HIS CONDUCT OR THAT HIS CONDUCT WAS REASONABLY CERTAIN CERTAIN TO CAUSE THE RESULT, ~~THE~~ BOTH OF WHICH INSTRUCTIONS NECESSARILY HAD REFERENCE TO THE OFFENSE REQUIREMENTS REGARDIN-G DEATH OR BODILY INJURY.

OFFICER ELLIS TESTIFIED (RR 3-30) THAT HE PUT PETITIONER ON NOTICE THAT HIS CONDUCT WAS CAUSING L.M. TO FEAR FOR HER SAFETY. HOWEVER, OFFICER ELLIS AND OFFICER DONALDSON, STATE WITNESSES, TESTIFIED THAT IF APPELLANT "HAMM" DID NOT OBEY THE WARNING HE EITHER DID NOT COMPREHEND OR DECIDED TO IGNORE THE LAW, AND DONALDSON MORE CLEARLY TESTIFIED THAT PETITIONER "DID NOT GET THE POINT," HE THOUGH-T WHAT HE'd DONE WAS "O.K." RR 3-58 THE STATE'S OWN PROOF NEGATED THE REQUIRED CULPABILITY OF THE OFFENSE.

PETITIONER, CONCLUDED THAT A REVIEW OF THE EVIDENCE IS JUST AS CONSISTENT WITH A DETERMINATION OF COMPLETE AND TOTAL INNOCENCE AS FAR AS PETITIONER INTENT WAS CONCERNED AS WITH A DETERMINATION THAT HE INTENDED HARM, OF ANY KIND, LET ALONE DEATH OR BODILY INJURY. TO THE EXTENT THE STATE RELIES ON OFFICER'S ELLIS' WARNING TO PETITION-ER IT SHOULD BE NOTED THAT COMPLAINANT'S MOTHER TESTIFIED ELLIS SAID HE DIDN'T NECESSARILY FEEL THAT THE GIRL (L.M.) WAS IN DANGER AND THAT THE MOTHER CONSIDERED THE DANGER MORE SERIOUSLY THAN DID OFFICER ELLIS. RR. 2-251 YET PETITIONER'S DISREGARD OF OFFICER ELLIS' WARNING IS WHAT THE STATE CONTENDED WAS PROOF THAT THE OFFENSE OCCURRED AND THAT PETITIONER HAD THE REQUISITE KNOWLEDGE OR BELIEF OF THE CONSEQUENCES OF HIS ACTIONS. RR 3-62, 64 65.

21

OFFICER ELLIS ALSO TESTIFIED THAT ALL OF PETITIONER'S ACTS, EXCLUDING THE LATER HONKING INCIDENT RESULTING IN DONALDSON'S ARREST, DID NOT IN THEIR ENTIRETY CONSTITUTE AN ARRESTABLE OFFENSE. RR3-37,39. PETITIONER'S ACTS DO NOT RISE TO THE SERIOUSNESS PRESENTED IN TEXAS CASES UPHOLDING STALKING CONVICTIONS AND NEGATE RATHER THAN PROVE THE GUILTY KNOWLEDGE AND INTENT REQUIRED BY THE STATUTE.

## CONCLUSION AND PRAYER

PETITIONER REQUESTS EITHER REVERSE AND REMAND ON THE JURY ISSUES, OR REVERSAL AND RENDER ON THE INSUFFICIENT EVIDENCE POINT.

EXPARTE NYABWA 366 S.W.3D 710-11 (TX. CRIM APP 2012) "RULE 68.7 WAS AMENDED TO PROVIDE THAT AN APPELLATE COURT MUST SEND THE APPELLATE RECORD TO [THE COURT OF CRIMINAL APPEALS] WITHIN 15 DAYS OF RECEIVING NOTICE.

RESPECTFULLY SUBMITTED
x _James D. Hamm_ #01902108
JAMES DESTRY HAMM #01902108
BRADSHAW STATE JAIL
P.O. BOX 9000
HENDERSON TEXAS 75653

## CERTIFICATE OF SERVICE

I, CERTIFY THAT A TRUE AND CORRECT COPY OF THE ABOVE AND FOREGOING PETITIONER'S BRIEF WAS ON THIS _1ST_ DAY OF JUNE 2015, SENT BY U.S. MAIL, POSTAGE PREPAID AND PROPERLY ADDRESSED TO THE COURT OF CRIMINALS APPEALS CLERK, ABEL ACOSTA, P.O. BOX 12308, CAPITOL STATION AUSTIN TEXAS 78711.

x _James D. Hamm_ #0190210
JAMES DESTRY HAMM #01902108 #0101

(22)

AFFIRM; and Opinion Filed March 6, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-13-01687-CR
_____

## JAMES DESTRY HAMM, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District Court
Rockwall County, Texas
Trial Court Cause No. 02-13-340

# MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Appellant James Destry Hamm appeals his conviction for the offense of stalking. A jury found appellant guilty and assessed his punishment at six years' imprisonment. In three issues on appeal, appellant argues that portions of the charge to the jury were fundamentally erroneous and that the evidence was insufficient to support the conviction. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm.

## BACKGROUND

The complainant testified that, during her junior year of high school when she was sixteen years old, a man who appeared to be in his mid-forties repeatedly drove by her, honked, smiled, and waved at her about once a week during her walk from school to work. Three or four

weeks after these incidents began, the complainant saw the same man pull his car into the parking lot of a convenience store that the complainant was entering. The man watched and waited for her to approach the store. As she came to the doors, he walked across the sidewalk, opened the door for her, and said, "Hey, how are you doing?" She did not respond and went into the store. The man also went into the store, purchased cigarettes, and then watched the complainant "like he was checking [her] out" as she waited in line to purchase a drink. He then exited and drove away. The complainant testified that she was "scared as he pulled up" and she did not know "if he was going to come up and grab" her. She testified that she was fearful because it appeared that he was "going to attempt" to "match [her] schedule and kidnap [her] or something." She stated that she had learned in school that "someone may attempt to kidnap you if they are following you and you don't know them."

During the summer, the same man honked and waved at the complainant a couple of times. But when the complainant began her senior year of high school, he began to honk to get her attention once a week or once every other week at the same intersection. In late September, as the complainant exited a store after purchasing a drink, she noticed that the same driver was driving very slowly beside her. When she looked at him, he waved, mouthed words to her that she could not understand, and "made gestures beckoning" her and pointed "at the passenger seat of his car, requesting that [she] come and get in his car with him." The complainant testified that she "was panicked" and concerned that he could kidnap her and "that he might stop the car and get out and pull me into the car[.]" After she turned away, the driver drove off. As the car passed, the complainant noted the license plate number and typed the number into her phone.

The complainant and her mother called the police to report the incident and the license plate number. Officer Josh Ellis of the Rockwall Police Department responded, and the

–2–

complainant and her mother described to him the history of the events leading up to the latest incident. Ellis asked the complainant to report any future incidents to the police.

Officer Ellis testified that he determined that the car was registered to appellant based on the license plate number. That evening, Officer Ellis went to appellant's residence and interviewed him. Officer Ellis testified that he explained to appellant that he had received a call from "a concerned mother and a daughter about her safety." Ellis testified, "I explained to Mr. Hamm that, you know, the victim was a juvenile and that it would be in his best interests not to make any more contact with her as she was in fear, you know, of her safety and her mother was also[.]" Ellis testified that appellant said that he did not think that he was doing anything wrong. Appellant also commented, "Well, how am I supposed to get a date if I can't talk to anyone?" Ellis responded, "Well, I'm not telling you you can't speak to anyone, but this particular individual, she is very concerned about her safety, and it would just be in your best interests not to speak with her and make any more contact with her." Ellis testified that he thought "Mr. Hamm understood . . . the seriousness of it, and he assured [Ellis] that he would not make any more contact with the victim." Ellis stated that he felt that "going to Mr. Hamm's residence and expressing . . . the concern from the mother and the victim, that he would . . . stop" and that "basically he told [Ellis] that he would" as appellant "apologized and said he wouldn't make any more contact." When asked what it indicates when a person continues engaging in conduct that the police requested that they stop, Ellis responded, "It basically tells me that they didn't comprehend it or they're just ignoring the law and going to continue, you know, harassing or stalking someone."

After Officer Ellis met with appellant, the complainant did not see appellant for several months. But during the spring semester, appellant began to follow and honk at her again. After two or three of these incidents, appellant drove up the street behind the complainant as she

—3—

walked on the sidewalk and "was following" her. He honked, and when she did not look at him, he honked again, "persisting that [she] give some attention." When she looked, the driver smiled, waved, and then turned the corner.

The complainant and her mother reported the incident to the police. Officer John Donaldson of the Rockwall Police Department responded, and heard about the recent and past incidents involving appellant from the complainant and her mother. Donaldson testified that he contacted Officer Ellis prior to interviewing appellant, and that Ellis told him that Ellis had "informed Mr. Hamm that he had placed a juvenile female in fear due to his repeated attempted contacts with her; that she was young; that it was inappropriate; that a man of his age should not be approaching young girls in this fashion; and that he was to stop having contact with her." Donaldson then interviewed appellant at his residence. Donaldson testified:

> I reminded him that Officer Ellis had told him previously months earlier that his behavior had placed her in fear and he had been told to stay away from her, and here now the same pattern of behavior, same girl, and that he had placed her in fear where she was left crying at an intersection.

Donaldson testified that appellant eventually admitted that he knew to whom Donaldson was referring but said that it was a coincidence that he was near her. When asked if appellant understood "the point when [Donaldson] spoke to him, or did he seem to think that his behavior was okay[,]" Donaldson replied that appellant "did not get the point" and he "made excuses about his behavior," "changing the story" and "the excuse why it was okay." Donaldson testified that he strove to give appellant the opportunity to give a reasonable explanation for his repeated behavior, but that Donaldson did not find appellant's responses and excuses reasonable.[1] As a result, after the interview, Donaldson sought and obtained an arrest warrant against appellant.

---

[1] A video of Donaldson's interview of appellant was admitted as an exhibit for the State and played for the jury.

## JURY CHARGE ERROR

In his first issue, appellant argues that the application paragraph in the jury charge at the guilt-innocence phase of trial was fundamentally erroneous because it omitted an element of the offense: that a reasonable person would fear bodily injury or death from appellant's actions. In his second issue, appellant argues that the application paragraph of the jury charge was also fundamentally erroneous because it did not require the jury to find that appellant engaged in conduct that he knew or reasonably believed the complainant would regard as threatening bodily injury or death, but only that appellant knew or reasonably believed that the complainant would regard the conduct as threatening.

### Background

The jury charge read, in relevant part:

> Our law provides that a person commits an offense if, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, the person knowingly engages in conduct that the person knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person, and causes the other person to be placed in fear of bodily injury or death, and would cause a reasonable person to fear bodily injury or death for himself or herself.

> . . . .

> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.

> . . . .

> Now, if you find from the evidence beyond a reasonable doubt that between the dates of on or about June 1, 2012 and May 10, 2013, in Rockwall County, Texas, the defendant, JAMES DESTRY HAMM, did then and there unlawfully, knowingly engage in conduct directed specifically toward [the complainant] that the defendant knew or reasonably believed the said [complainant] would regard as threatening, and the defendant's conduct would cause fear, and did cause [the complainant] to fear bodily injury or death for said [complainant], by following [the complainant] on more than one occasion and by continuing to follow [the complainant] after being notified by Officer J. Ellis, Rockwall Police Department, that the defendant was placing [the complainant] in fear, and it is further presented in and to said Court, that each of the foregoing acts

–5–

was committed pursuant to the same scheme or course of conduct that was directed specifically at [the complainant], then you will find the defendant guilty as charged in the indictment.

The language of the application paragraph tracked the language of the indictment. Before the court read the charge to the jury, the defense stated that it had no objections to the charge.

**Applicable Law and Standard of Review**

The previous version of section 42.072 of the penal code that applies here provides in relevant part:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

. . . .

(2) causes the other person . . . to be placed in fear of bodily injury or death . . . ;

. . . .

(3) would cause a reasonable person to fear:

(A) bodily injury or death for himself or herself[.][2]

In our review of a claim of jury-charge error, we must first determine whether there was error in the charge. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). If there was error, we must then determine whether the appellant suffered harm as a result of the error. *Id.*;

---

[2] The legislature amended section 42.072 of the penal code in 2013. Because the amended version applies to offenses committed on or after September 1, 2013, the previous version of the statute applies here as Hamm was indicted for offenses committed between June 1, 2012, and May 10, 2013. Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1, § 1, 1997 Tex. Gen. Laws 1, 1, *amended by* Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 15.02(e), 1999 Tex. Gen. Laws 127, 358, *amended by* Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 2, 2001 Tex. Gen. Laws 2795, 2795–96, *amended by* Act of May 19, 2011, 82nd Leg., R.S., ch. 591, § 1, 2011 Tex. Sess. Law. Serv. 1433, 1433 (West) (amended 2013) (current version at TEX. PENAL CODE ANN. § 42.072 (West Supp. 2014)).

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When an appellant did not object to the charge, the appellant must show that the error actually caused him egregious harm. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Errors that result in egregious harm are errors that deprive the defendant of a valuable right, affect the very basis of the case, or vitally affect a defensive theory. *Id.* at 461–62.

### Arguments of the Parties

Appellant argues that the wording and omissions in the jury charge allowed the jury to convict appellant "on less than the essential statutory elements and definition of the offense." Appellant contends that the error in the charge resulted in egregious harm because he was denied his right to a jury determination on each element of the alleged offense and, as a result, was denied a fair and impartial trial. The State responds that there was error in the jury charge, but argues that the error did not result in egregious harm.

### Analysis

"A jury charge must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense." *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (requiring the judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case"). "The meaning of a jury instruction must be taken from the whole charge, and jurors are not authorized to return a verdict except under those conditions given by the application paragraph of the charge." *Delapaz v. State*, 228 S.W.3d 183, 212 (Tex. App.—Dallas 2007, pet. ref'd). A jury charge is adequate

> if it either contains an application paragraph specifying all of the conditions to be met before a conviction under such theory is authorized, or contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or contains some logically consistent combination of such paragraphs.

–7–

*Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997).

In this case, the jury charge contained a "logically consistent combination of" the application paragraph with the earlier abstract paragraph that laid out the three elements of stalking. *See id.*; *see also Ploeger v. State*, 189 S.W.3d 799, 805 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that "sub-paragraphs (1), (2), and (3) of section 42.072(a) are each elements of a single offense" of stalking). The application paragraph included the requirements that the jury find from the evidence beyond a reasonable doubt that appellant "knowingly engage[d] in conduct directed specifically toward [the complainant] that the defendant knew or reasonably believed the said [complainant] would regard as threatening, and the defendant's conduct would cause fear, and did cause [the complainant] to fear bodily injury or death for [herself.]" The abstract paragraph laid out the elements of the offense of stalking, stating that a person commits the offense of stalking if "the person knowingly engages in conduct that the person knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person, and causes the other person to be placed in fear of bodily injury or death, and would cause a reasonable person to fear bodily injury or death for himself or herself."

As a result, the application paragraph stated the first element of stalking—that appellant knew or reasonably believed that the other person would regard his conduct as threatening—but did not include the last phrase of that element—"bodily injury or death for the other person." The abstract paragraph stated the element in its entirety, including the requirement that appellant know or reasonably believe that the other person "will regard" his conduct "as threatening bodily injury or death to the other person[.]" Similarly, the abstract paragraph stated the third element—that appellant's conduct "would cause a reasonable person to fear bodily injury or death for himself or herself." The application paragraph referred to this element with the

requirement that the jury find beyond a reasonable doubt that "the defendant's conduct would cause fear[.]"

Two cases that the State cites as authority are analogous. In *Dinkins v. State*, the appellant argued that the jury charge erroneously authorized a capital murder conviction without requiring that the second murder involved in the offense be committed intentionally or knowingly. 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). Although the abstract portion of the charge defined capital murder and murder, the application portion did not state a culpable mental state for a second murder. *Id.* The court concluded that, because the application portion of the charge allowed the jury to convict the appellant of capital murder only if it found that both killings were murders and the abstract portion provided the statutory definition of murder, "the jury was instructed that a person commits capital murder only if both killings were committed intentionally and knowingly" and, as a result, the jury charge was not defective. *Id.* at 339–40.

In *Holley v. State*, the appellant argued that the application paragraph allowed conviction under the felony murder rule for a death that resulted during the commission of a misdemeanor because the application paragraph did not require a finding of serious bodily injury and allowed conviction upon a finding that defendant's conduct was committed recklessly. 766 S.W.2d 254, 255 (Tex. Crim. App. 1989). The application paragraph required the jury to find that the defendant "intentionally or knowingly or recklessly committed or attempted to commit a felony, to wit: injury to a child[.]" The abstract portion stated, "Our law provides that it is a felony to intentionally or knowingly or recklessly cause serious bodily injury to a child younger than fifteen years of age." *Id.* The court concluded that the application paragraph "tacitly incorporate[d] an abstract proposition of law which was stated earlier in the charge." *Id.* at 256. The court stated that, because the application paragraph properly instructed the jury under what circumstances they could convict appellant and because one of these circumstances—

–9–

commission of "a felony, to wit: injury to a child"—was "completely explained to the jury" in the abstract portion of the charge, the instructions provided a "complete map" to the jury of "each step necessary to convict." *Id.* Consequently, the court concluded that there was no error. *Id.* at 257.

Similarly, in this case, the application paragraph "tacitly incorporate[d] an abstract proposition of law" stated earlier in the charge. The application paragraph "informed the jury under what circumstances they could convict appellant" and two of these circumstances—that the defendant knew or reasonably believed that the other person would regard his conduct "as threatening" and that "the defendant's conduct would cause fear"—were "completely explained to the jury" in the abstract paragraph, which made clear that the defendant must have known or reasonably believed that the other person would regard his conduct as "threatening bodily injury or death to the other person" and the requirement that his conduct "would cause a reasonable person to fear bodily injury or death." Consequently, these instructions provided a "complete map" to the jury of each step that they had to follow in order to convict appellant. *See id.* at 256–57.

The authorities that appellant cites are distinguishable. In *Ploeger*, the court concluded that it was error for the application paragraph of the jury charge to state the three elements of stalking under penal code section 42.072 disjunctively rather than conjunctively. 189 S.W.3d at 804–07. The jury charge in this case stated the three elements of section 42.072 conjunctively. In *Campbell v. State*, the court of criminal appeals stated that "it is error for a trial judge to refer to the law of parties in the abstract portion of the jury charge and not to apply that law or to refer to that law in the application paragraph of the jury charge." 910 S.W.2d 475, 477 (Tex. Crim. App. 1995). In the present case, the application paragraph "refer[red]" to the three elements of stalking, which were explained completely to the jury in the abstract paragraph. In *Harris v.*

−10−

*State*, the court of criminal appeals held that, although the abstract paragraphs adequately explained the law, "there [was] a complete failure to apply this law to the facts and issues in evidence." 522 S.W.2d 199, 201 (Tex. Crim. App. 1975). In contrast, the jury charge at issue here contained an application paragraph that applied the law to the facts and issues. Likewise, in *Fennell v. State*, the court concluded that, because the court only instructed the jury abstractly on the issue of self defense and did not apply that law to the facts, there was error in the charge. 424 S.W.2d 631, 632–33 (Tex. Crim. App. 1968). As explained above, in this case, the jury charge not only explained the elements of stalking abstractly, it applied the law to the facts of the case.

We conclude that there was no error. We overrule appellant's first and second issues.

## SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant argues that there was legally insufficient evidence to support the element requiring that appellant knew or reasonably believed that the other person would regard his conduct as threatening bodily injury or death. The State contends that the evidence was sufficient to support this element.

### Applicable Law and Standard of Review

In analyzing a claim of insufficient evidence, we review all the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Wise v. State*, 364 S.W.3d 900, 902 (Tex. Crim. App. 2012). The factfinder is the exclusive judge of the credibility of the witnesses and the weight to give their testimony and resolves all conflicts in the evidence. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). When we analyze the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence

–11–

when viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). We treat direct and circumstantial evidence equally. *Id.*

### Analysis

Appellant argues the evidence was insufficient to establish that appellant knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death because (1) the complainant and her family did not express their concerns directly to appellant, (2) there was not "a scintilla of evidence of actual threat of bodily injury or death[,]" and (3) there was no evidence that appellant "was aware of the nature of his conduct or that his conduct was reasonably certain to cause the result[.]"

Appellant argues that the "State's own proof negated the required culpability of the offense." He asserts that Officers Ellis and Donaldson "testified that if Appellant did not obey the warning he either did not comprehend or decided to ignore the law[.]" Appellant also relies on Donaldson's statement that appellant did not "get the point" and his "changing the excuse why it was okay." And appellant contends that the significance of Officer Ellis's warning to appellant to stay away from the complainant should be discounted because the "Complainant's Mother testified Ellis said that he didn't necessarily feel that the girl was in danger and that the Mother considered the danger more seriously than did Officer Ellis." In addition, appellant stresses Officer Ellis's testimony that appellant's acts, excluding the later honking incident, did not in their entirety constitute "an arrestable offense[.]" Appellant contends that, as a result, the evidence negates rather than proves "the guilty knowledge and intent required by the statute."

But, as the State points out, evidence in the record was sufficient to support a finding that appellant knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death. Officer Ellis testified that he informed appellant that his

conduct placed the complainant in fear for her safety and that it would be in his best interest to cease his contacts with her. Ellis testified that he thought "Mr. Hamm understood . . . the seriousness of it, and he assured [Ellis] that he would not make any more contact with the victim." The fact that the complainant's mother testified that she did not believe that Officer Ellis considered the incidents as seriously as she did does not negate the fact that Ellis made appellant aware that he was placing the complainant in fear for her safety. And Ellis's testimony that he thought that appellant's later actions towards the complainant indicated that appellant did not "comprehend it" or that he was ignoring the law does not negate Ellis's testimony that he informed appellant and made him aware of the effect of his conduct on the complainant.

Likewise, Officer Donaldson testified that he reminded appellant that Officer Ellis had previously told him "that his behavior had placed her in fear and he had been told to stay away from her" and that, with this "same pattern of behavior, same girl," he "had placed her in fear where she was left crying at an intersection." Although Donaldson testified that appellant "did not get the point" and made excuses, Donaldson's testimony demonstrated that he informed appellant that his conduct was causing the complainant to be in fear of her safety.

In sum, viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient for a reasonable factfinder to find that appellant knew or reasonably believed that the complainant would regard his conduct as threatening bodily injury or death. *See Jackson*, 443 U.S. at 318–19; *Wise*, 364 S.W.3d at 902. We overrule appellant's third issue.

-13-

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

131687F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JAMES DESTRY HAMM, Appellant

No. 05-13-01687-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 02-13-340.
Opinion delivered by Justice Lang-Miers, Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of March, 2015.